# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER HASFAL, | : | |
| | : | |
| Petitioner, | : | |
| | : | PRISONER CASE |
| v. | : | No. 3:09cv1874 (MRK) |
| | : | |
| COMMISSIONER OF CORRECTIONS, | : | |
| | : | |
| Respondent. | : | |

## RULING AND ORDER

Petitioner Christopher Hasfal, a Connecticut inmate currently confined at Carl Robinson Correctional Institution in Enfield, Connecticut, brings this *pro se* Amended Petition for a Writ of Habeas Corpus [doc. # 17] pursuant to 28 U.S.C. § 2254, challenging his state court conviction. For the reasons set forth below, the Court DENIES Mr. Hasfal's Petition.

**I.**

A brief account of the facts underlying Mr. Hasfal's petition follows. On September 2, 2004, Mr. Hasfal was convicted of violation of a protective order, in violation of Connecticut General Statutes § 53a-223(a). On November 5, 2004, the Connecticut Superior Court sentenced Mr. Hasfal to a total effective sentence of five years incarceration.

On December 10, 2004, *see* App'x J at 1, Mr. Hasfal filed a direct appeal in the Connecticut Appellate Court. *See State v. Hasfal*, 94 Conn. App. 741 (2006) ("*Hasfal I*"). In his direct appeal, Mr. Hasfal argued that the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to establish that he had the requisite general intent to violate the protective order that had previously been entered against him. *See id.* at 744. Specifically, Mr. Hasfal argued that because he understood that the protective order required him

1

to have a police escort to recover his belongings and because he was under the impression that the police were notified and would be at the victim's apartment, the jury could not have found that he had the requisite intent to violate the protective order. *See id.* Construing the evidence in the light most favorable to sustaining the verdict, as it was required to do, *see id.* at 746, the Appellate Court concluded that the jury had sufficient evidence from which it could determine that Mr. Hasfal understood the terms of the protective order but nonetheless, "with the requisite intent, and without a police escort, entered the victim's apartment, where she was present, in order to have contact with her, despite the protective order prohibiting contact and prohibiting entry into the dwelling of the victim." *Id.* The Appellate Court issued its opinion on April 11, 2006. Mr. Hasfal did not seek further discretionary review of the Appellate Court's decision by the Connecticut Supreme Court.

In addition to his direct appeal, Mr. Hasfal collaterally challenged his sentence, filing a *pro se* state petition for writ of habeas corpus on December 5, 2005. *See* Record on Appeal of the State Habeas Court's Decision, App'x I at 1. Habeas counsel was appointed for Mr. Hasfal, and Mr. Hasfal filed an amended petition on May 25, 2007. *See* Amended State Habeas Petition, App'x I at 3. In his amended petition, Mr. Hasfal argued that he was denied effective assistance of counsel in violation of his state and federal constitutional rights because (1) counsel failed to conduct an investigation which would have revealed that the victim had in fact contacted Mr. Hasfal in contradiction of her testimony; and (2) counsel failed to gather exculpatory materials in support of Mr. Hasfal's contention that the victim contacted him. *See id.*

On October 16, 2007, the state habeas court held an evidentiary hearing on Mr. Hasfal's amended petition. *See* Hearing Tr., *Hasfal v. Warden*, No. CV05-4000858-S, Conn. Super. Ct., Jud. Dist. of Tolland at Rockville ("*Hasfal II*"), App'x O. On March 31, 2009, the Appellate

Court issued an opinion in which it unanimously affirmed the lower court's denial of Mr. Hasfal's state habeas petition. *See Hasfal v. Comm'r of Correction*, 113 Conn. App. 483 (2009) ("*Hasfal III*"). On April 20, 2009, Mr. Hasfal sought certification to appeal the Appellate Court's decision. *See* Petition for Writ of Certification, App'x L. Mr. Hasfal's petition for writ of certification was denied on June 3, 2009. *See Hasfal v. Comm'r*, 292 Conn. 908 (2009) ("*Hasfal IV*").

On November 18, 2009, Mr. Hasfal filed his Petition for Writ of Habeas Corpus [doc. # 1] in this Court. Mr. Hasfal's original Petition included three claims: (1) that Mr. Hasfal's trial counsel was "deliberately ineffective," because she failed to seek to exclude exculpatory evidence that would have shown Mr. Hasfal did not have general intent to violate the protective order; (2) that the trial court erred because, under *Jackson v. Virginia*, 443 U.S. 307 (1979), there was insufficient evidence to support a finding that Mr. Hasfal was guilty beyond a reasonable doubt; and (3) that the state habeas court and Appellate Court erred in finding that Mr. Hasfal failed to demonstrate that he was prejudiced by his counsel's alleged ineffectiveness. *See* Petition [doc. # 1] at 9-13.

On May 14, 2010, the State filed its Response [doc. # 13] to Mr. Hasfal's Petition. In its Response, the State challenged all of Mr. Hasfal's claims on their merits, and also pointed out that Mr. Hasfal's claim regarding insufficiency of the evidence was unexhausted, since it had been raised only on direct appeal, and Mr. Hasfal had not sought certification by the Connecticut Supreme Court of the Appellate Court's rejection of his direct appeal. *See* State's Response [doc. # 13] at 18-19. On June 14, 2010, Mr. Hasfal filed a Motion to Amend [doc. # 15] his petition, which the Court granted on July 15, 2010. Mr. Hasfal's Amended Petition for Writ of Habeas Corpus [doc. # 17] was filed on July 15, 2010.

## II.

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 104, 110 Stat. 1214, 129, a federal court may not grant "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" unless the state court's "decision . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *see Yarborough v. Alvarado*, 541 U.S. 652, 655 (2004); *Portalatin v. Graham*, 624 F.3d 69, 79 (2d Cir. 2010) (en banc); *Ancona v. Lantz*, No. 3:05cv363 (MRK), 2005 WL 1554029, at *1 (D. Conn. July 5, 2005). Thus, when faced with a state prisoner's petition for a writ of habeas corpus, a federal court must ask three questions: "(1) Was the principle of the Supreme Court case law relied upon by the petitioner 'clearly established' when the state court ruled?; (2) If so, was the state court's decision 'contrary to' that established Supreme Court precedent?; (3) If not, did the state court decision constitute an 'unreasonable application' of that principle?" *Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001).

Regarding the first inquiry, only holdings of the Supreme Court, not the Second Circuit, can provide a basis for habeas relief. *See DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002) ("[A]fter AEDPA, [a Second Circuit decision] cannot serve as a basis for federal habeas relief under Section 2254 [unless] it has [a] counterpart in Supreme Court jurisprudence."). Moreover, the Second Circuit has instructed that "the statutory phrase 'clearly established Federal law, as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008) (citations and alteration omitted). That

said, "although the Supreme Court must have acknowledged the right, it need not have considered the exact incarnation of that right or approved the specific theory in order for the underlying right to be clearly established." *Ryan v. Miller*, 303 F.3d 231, 248 (2d Cir. 2002).

The Second Circuit has explained that on the second inquiry, a state court decision is contrary to existing Supreme Court precedent when the state court decision "applies a rule of law that contradicts the governing law set forth in Supreme Court cases," or when it "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court's precedent." *Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149, 156 (2d Cir. 2009) (quotation marks, citations, and alterations omitted). "In either event, a state court ruling is 'contrary to' Supreme Court precedent only if it is 'diametrically different, opposite in character or nature, or mutually opposed' to the precedential holding." *Lurie v. Wittner*, 228 F.3d 113, 127 (quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Regarding the third inquiry, as this Court discussed at length in *Ancona v. Lantz*, the Supreme Court has provided substantial guidance to lower courts about how to analyze claims under the third, "unreasonable application" inquiry. *See* 2005 WL 839655, at *3-5. In sum, two key principles emerge from the Supreme Court's decisions.

First, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. An objectively unreasonable application of federal law is different from an incorrect or erroneous application of federal law. *See Brown v. Payton*, 544 U.S. 133, 147 (2005). As the Second Circuit has summarized, "the AEDPA standard

requires 'some increment of incorrectness beyond error.'" *Christie v. Hollins*, 409 F.3d 120, 125 (2d Cir. 2005) (citations and alterations omitted).

Second, in assessing the reasonableness of a state court adjudication, the range of reasonable judgment can depend upon the nature of the rule at issue. For a specific legal rule, "the range may be narrow" – either "plainly correct or incorrect." *Yarborough*, 541 U.S. at 664. Other rules are more general, however, affording state courts "more leeway" in reaching determinations on a case-by-case basis. *See id.*

**III.**

With those principles in mind, the Court turns to consider Mr. Hasfal's claims. In his Amended Petition, Mr. Hasfal asserts three grounds for issuance of a writ of habeas corpus, each of which essentially alleges ineffective assistance of counsel: (1) ineffective assistance of trial counsel, based on counsel's failure to investigate and gather mitigating and exculpatory evidence, in violation of the Sixth and Fourteenth Amendments; (2) error by the state habeas and appellate courts in finding that Mr. Hasfal failed to prove that his counsel's performance was deficient; and (3) error by the state courts in finding that Mr. Hasfal failed to prove that he was prejudiced by his counsel's allegedly deficient performance. *See* Amended Petition [doc. # 17] at 6-7. Mr. Hasfal has apparently abandoned his insufficiency of the evidence claim. The Court finds that the claims stated in Mr. Hasfal's Amended Petition were properly exhausted in the state courts.

Although Mr. Hasfal frames his Amended Petition as based on three separate claims, his three stated grounds for relief are effectively a single claim of ineffective assistance of counsel. Mr. Hasfal argues, as he did in his state habeas petition, that his trial counsel was ineffective because she failed to investigate and submit the telephone record of Mr. Hasfal's alleged victim. *See* Amended Petition [doc. # 17] at 31. Mr. Hasfal claim that trial counsel "deliberately caused

his trial to proceed, though the State's evidence was insufficient on the underlying charges that caused the protective order to issue." *Id.* at 32 (quotation marks and citation omitted).

The correct standard for analyzing Mr. Hasfal's ineffective assistance of counsel claim is the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a defendant asserting a claim for ineffective assistance of counsel must establish: (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) that his counsel's unprofessional errors actually prejudiced the defense. *See id.* at 687-88. In Mr. Hasfal's case, the state habeas court explicitly relied on *Strickland*. The Connecticut Appellate Court analyzed Mr. Hasfal's claim under *Strickland*'s two-prong test, stating:

> A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . .

*Hasfal III*, 113 Conn. App. at 485-86 (quoting *State v. Brown*, 279 Conn. 493, 525 (2006)) (alterations in original) (quotation marks omitted); *see Strickland*, 466 U.S. at 687, 694. Because the Connecticut Appellate Court properly relied upon the *Strickland* framework, its decision was not contrary to clearly established federal law.

Furthermore, the Appellate Court's application of the *Strickland* framework in the context of Mr. Hasfal's case was not objectively unreasonable. The Appellate Court noted correctly that an ineffective assistance of counsel claim "will succeed only if both prongs [of the *Strickland* test] are satisfied." *Hasfal III*, 113 F.3d at 486; *see Strickland*, 466 U.S. at 687. As the Supreme Court recently reaffirmed, to satisfy the prejudice prong of the *Strickland* test, a petitioner must demonstrate "a 'substantial,' not just 'conceivable,' likelihood" that, but for counsel's

7

unprofessional errors, the result of the proceeding would have been different. *Cullen v. Pinholster*, --- S. Ct. ----, Slip. Op. at 17 (2011) (quoting *Harrington v. Richter*, 562 U.S. ---, 131 S. Ct. 770, 792 (2011)).

In his appeal of the state habeas court's decision, Mr. Hasfal argued that if the jury had believed that Mr. Hasfal "was invited to the victim's apartment to retrieve personal belongings, and that the victim indicated she would notify the police," *see* Br. of Petitioner-Appellant on Appeal of State Habeas Court's Decision, App'x J at 9, Mr. Hasfal could have established a defense that he was present under the exception to the protective order – that is, a visit to the apartment to retrieve his belongings *with* police escort. The Appellate Court rejected that argument. The Appellate Court did not decide whether Mr. Hasfal's claim satisfied the first prong of the *Strickland* test. Analyzing Mr. Hasfal's claim under the second prong of the *Strickland* test, the Appellate Court concluded that the failure to obtain and present the telephone records did not prejudice Mr. Hasfal because that evidence would have no bearing on Mr. Hasfal's general intent to violate the protective order. The court explained:

> To prove a charge of criminal violation of a protective order, the state must demonstrate that a protective order was issued against the [petitioner] in accordance with General Statutes §§ 46b-38c (e) or 54-1k, and it must demonstrate the terms of the order and the manner in which it was violated by the [petitioner]. . . . Regarding the mental element of the crime, we have explained previously [that] a violation of a protective order does not incorporate the specific intent to harass. . . . All that is necessary is a general intent that one intend to perform the activities that constitute the violation.

*Hasfal III*, 113 Conn. App. at 487 (quoting *Hasfal I*, 94 Conn. App. at 744-45) (alterations in original; quotation marks omitted). The Appellate Court concluded that "[e]ven if the jury were to have heard and believed that the victim had telephoned the petitioner, that would not change the fact that he was in direct violation of the clear dictates of the protective order when he entered the victim's home without a police escort, satisfying the general intent required to prove

8

a violation of § 53a-223(a)." *Id.* Because Mr. Hasfal "was under a court order to stay out of the home and to have no contact with the victim," and because "[t]he only exception to this was to retrieve his personal belongings while accompanied by the police," Mr. Hasfal "failed to demonstrate a reasonable probability that the result of his trial would have been different had counsel sought to prove that the victim had telephoned him." *Id.*

In sum, the Appellate Court determined that the evidence of the telephone call from Mr. Hasfal's alleged victim was not in tension with a finding that Mr. Hasfal had general intent to engage in actions that violated the terms of the protective order, the necessary *mens rea*. In view of that determination, it was not unreasonable for the Appellate Court to find that Mr. Hasfal had not established a "reasonable probability" that the outcome of the trial was affected by his counsel's alleged errors – that is, "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Pinholster*, Slip. Op. at 17 (quoting *Strickland*, 466 U.S. at 694).

Although the Connecticut Appellate Court did not decide whether Mr. Hasfal's ineffective assistance of counsel claim satisfied the first prong of the *Strickland* test, the Court notes that Mr. Hasfal's claim would fail under that prong as well. In *Strickland*, "the [Supreme] Court established that counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (quoting *Strickland*, 466 U.S. at 688) (alteration in original). Since the evidence that Mr. Hasfal claims should have been presented would not have cast doubt on the State's contention that Mr. Hasfal had general intent to violate the protective order, counsel's failure to conduct an investigation regarding the alleged victim's telephone contact with Mr. Hasfal and failure to gather and present

materials in support of Mr. Hasfal's contention that the alleged victim contacted him were not unreasonable under the circumstances. Mr. Hasfal's claim thus fails to overcome the presumption that "under the circumstances, the challenged action[s] might be considered sound trial strategy." *Id.* at 19 (quoting *Strickland*, 466 U.S. at 689) (quotation marks omitted).

It is not the province of this Court to reexamine state-court determinations on state-law questions. *See Carvajal v. Artus*, --- F.3d ----, 2011 U.S. App. LEXIS 1456, at *26 (2d Cir. 2011). Given that the Appellate Court found that the evidence Mr. Hasfal argues his counsel should have presented would not have suggested that Mr. Hasfal lacked the requisite *mens rea* for violation of a protective order under Connecticut law, the Appellate Court reasonably concluded that counsel's failure to present that evidence "was not a sufficiently serious omission 'as to deprive the defendant of a fair trial, a trial whose result is reasonable.'" *Gueits v. Kirkpatrick*, 612 F.3d 118, 125 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 687).

## IV.

Having rejected the grounds for relief asserted in support of Mr. Hasfal's petition, the Court DENIES his Amended Petition for a Writ of Habeas Corpus [doc. # 17]. Furthermore, because Mr. Hasfal has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. Mr. Hasfal's Motion for Determination [doc. # 18] is DENIED AS MOOT. **The Clerk is directed to enter judgment for Respondent and to close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz      
        United States District Judge

**Dated at New Haven, Connecticut: April 6, 2011.**